UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES P. HINES, as Personal
Representative of the Estate of Eva
Cordova-Rodriguez,

      Plaintiff,

v.                                Case No. 8:14-cv-1062-T-24 TGW

GEICO INDEMNITY COMPANY,

      Defendant.
_____/

**ORDER**

This cause comes before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 117). Plaintiff opposes the motion. (Doc. No. S-133). As explained below, the motion is denied.

**I. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate

specific facts showing there is a genuine issue for trial.  See id. (citation omitted).

## II.  Background

This is a bad faith insurance case arising out of a car accident.  On April 23, 2007, Eva Cordova-Rodriguez ("Cordova") was driving a car that was owned by her husband, Peter Rodriguez ("Rodriguez").  Defendant GEICO Indemnity Company ("GEICO") issued an automobile liability policy to Cordova and Rodriguez that had bodily injury limits of $25,000 per person/$50,000 per occurrence, and which was in force at the time of the accident.

Cordova drove her car into a car being driven by Eunice Acosta ("Acosta").  Cordova was arrested for driving under the influence at the scene.  On April 25, 2007, Acosta's attorney, Dario Diaz, advised GEICO that he had been retained to represent Acosta.

On October 2, 2007, Diaz sent a demand letter to GEICO, in which he offered to settle Acosta's claim against Cordova and Rodriguez in exchange for the bodily injury policy limit of $25,000.  In the demand letter, Diaz stated the following:

> Eunice Acosta sought relief for the pain from Dr. Brock Mathieson. Complaints included low back pain, neck pain, and bilateral elbow pain.  Dr. Mathieson's initial assessment included cervical, thoracic and lumbar sprain/strain; bilateral elbow contusion; and bilateral shoulder sprain/strain. Dr. Mathieson placed Ms. Acosta on a conservative therapy program and limited her activities.
>
> While receiving medical attention Eunice Acosta's physicians ordered diagnostic tests. The right elbow MRI revealed minimal medial epicondylitis marrow edema in the medial epicondyle. The cervical x-rays showed straightening of the cervical spine due to muscle spasms. Copies of the diagnostic reports are included for your review.
>
> Eunice Acosta completed treatment and on August 15, 2007, a final report was authored by her treating physician. Dr. Mathieson reaffirmed the previous impressions and acknowledged that Ms. Acosta had reached maximum medical improvement.  The final report finds permanent residual injuries as a result of the accident of

> April 23, 2007. These permanent injuries were sustained by chronic post traumatic cervical thoracic and lumbar sprain/strain; chronic post traumatic bilateral elbow medial epicondylitis; and chronic post traumatic sciatica.
>
> As a result of receiving medical treatment for the injuries, Eunice Acosta incurred substantial medical bills [totaling $13,478.78]. . . .
>
> Future liability for treatment is yet to be determined. However, it is safe to assume that additional visits will be required to control exacerbations that will occur from time to time.
>
> It is clear based on the information provided that Eunice Acosta has sustained a serious injury as a result of your insured's negligence in this case. Thus our reasonable demand for the policy limits based on our client's life expectancy, and age of only 29 years at the time of the accident, as well as everything else made reference to in this letter, is reasonable and conservative.
>
> This offer is made in good faith in the quest for a fair and amicable settlement. It will remain open for a period of thirty (30) days . . . .

(Doc. No. 117-9). Diaz included Acosta's medical records with the demand letter. While the medical records described Acosta's injuries as being "chronic post traumatic" injuries, the records do not specifically describe Acosta's injuries as being "permanent." (Doc. No. 117-9).

On October 31, 2007, GEICO responded to the offer by stating the following:

> Based on the documentation submitted, your client's injuries appear primarily soft tissue in nature. We are willing to offer $3500.00 to resolve your client's bodily injury claim.

(Doc. No. 117-12). The amount GEICO offered was based on the fact that Acosta's PIP coverage had already paid almost $10,000 towards her $13,478.78 in medical bills.[1]  Acosta did

---

[1] In determining the value of Acosta's claim, Florida Statute § 627.737(2) provides that a claimant can only recover damages for pain and suffering if one of four conditions are met. The parties agree that the only applicable condition would be if Acosta had suffered a "permanent" injury within a reasonable degree of medical probability. GEICO's $3,500 counteroffer was based on its conclusion that Acosta's injuries were not permanent.

3

not accept GEICO's counteroffer.

Almost four months later, on February 22, 2008, Acosta (through her new attorney, Robert Joyce) filed suit against Cordova and Rodriguez. In June of 2008, Cordova and Rodriguez were served with the complaint.

In October of 2008, discovery was underway in the underlying car accident lawsuit. On October 13, 2008, Acosta responded to Cordova and Rodriguez's Interrogatories and Requests to Produce and provided the following three relevant pieces of information. (Doc. No. 135-4, 135-5). First, Acosta admitted to having two other car accidents in 2007—one on April 11, 2007 and one on December 26, 2007. (Doc. No. 135-4). Acosta contended that she was not injured in those other two car accidents.[2] (Doc. No. 135-4).

Second, Acosta disclosed that she had seen another doctor on March 17, 2008—Dr. Martinez. (Doc. No. 135-5). Acosta produced his medical records, in which he concluded that she had "suffered a permanent injury" from the car accident with Cordova and that she had "an overall 23% permanent impairment rating to the body as a whole." (Doc. No. 135-5). Dr. Martinez also opined that continued medical care costs would be approximately $3,000 per year (which included doctor visits, medication, physical therapy, a TENS unit, epidural blocks, and home therapy). (Doc. No. 135-5). Finally, he opined that Acosta might consider surgery for her elbows, which would cost approximately $5,000 each. (Doc. No. 135-5).

Third, Acosta described how her life had been limited by her injuries from the car

---

[2] However, when Acosta was deposed in the underlying car accident case on January 19, 2009, it appears that she testified that in the December car accident, her car received a t-bone impact and that she had bruising in her buttocks and left hip. (Doc. No. 135-7). Acosta's entire January 19, 2009 deposition was not filed with the Court.

accident. Those limitations included that she was limited in giving her special needs daughter therapy on her legs and feet and picking her up when needed. (Doc. No. 135-4).

On January 19, 2009, Acosta served proposals for settlement on Cordova and Rodriguez. Specifically, she offered to settle her claim against Cordova for $50,000 and to settle her claim against Rodriguez for $25,000. On February 9, 2009, Rodriguez countered with a settlement offer of $3,500 to settle the claim against him only. Acosta accepted Rodriguez's $3,500 counteroffer.

By March 24, 2009, Acosta had decided to undergo cervical spine surgery for her injuries. In her March 31, 2015 deposition, Acosta states that she was willing to settle her bodily injury claim against Cordova for the remaining bodily injury policy limit up until the time that she decided to have surgery. (Doc. No. 125, p. 35-36, 53-54).

On March 24, 2009, Joyce helped Acosta to schedule the surgery for April 22, 2009.[3] (Doc. No. 117-35). Thereafter, Joyce repeatedly told his staff not to let GEICO and Cordova know about the surgery, and he commented that GEICO and Cordova were "in deep 'stuff' now." (Doc. No. 117-37, Doc. No. 117-38, Doc. No. 117-40).

On July 14, 2009, Joyce finally revealed to GEICO and Cordova that Acosta had undergone cervical spine surgery. (Doc. No. 117-41). On July 17, 2009, GEICO attempted to tender the remaining $21,500[4] bodily injury policy limit to Acosta to settle her claim against

---

[3]It is curious to this Court why Joyce stated in his March 31, 2015 deposition that he did not recall Acosta telling him that she was going to have surgery prior to the surgery (Doc. No. 117-30), given that Joyce helped her to schedule the surgery.

[4]The insurance policy had a $25,000 bodily injury limit, and Acosta had already received $3,500 under the policy to settle her claim against Rodriguez. Thus, the remaining available bodily injury limit was $21,500.

Cordova, but Acosta rejected the settlement attempt.  The case went to trial, and on December 4, 2009, the jury awarded Acosta $539,850.00 in damages.

In May of 2010, Cordova died.  Plaintiff James Hines, Jr. was appointed as Cordova's personal representative.  On December 12, 2013, Hines filed this bad faith lawsuit against GEICO, and GEICO removed the case to this Court on May 5, 2014.  GEICO now moves for summary judgment on the bad faith claim that Hines has asserted against it.

### III.  Law Regarding Bad Faith Claims Handling

In Berges v. Infinity Insurance Company, the Florida Supreme Court explained the purpose of bad faith insurance law:

> Bad faith law was designed to protect insureds who have paid their premiums and who have fulfilled their contractual obligations by cooperating fully with the insurer in the resolution of claims.  The insurance contract requires that the insured surrender to the insurance company control over whether the claim is settled.  In exchange for this relinquishment of control over settlement and the conduct of the litigation, the insurer obligates itself to act in good faith in the investigation, handling, and settling of claims brought against the insured.  Indeed, this is what the insured expects when paying premiums.  Bad faith jurisprudence merely holds insurers accountable for failing to fulfill their obligations . . . .

896 So. 2d 665, 682-83 (Fla. 2005).

Twenty-five years earlier, the Florida Supreme Court set forth the standard to be applied in bad faith litigation:

> An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business.  For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. . . . The insurer

> must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so. Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith.

Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980)(internal citations omitted). Thus, "[a]n insurer cannot escape liability for breach of the duty of good faith by acting upon what it considers to be its interest alone." Id. at 786.

In determining whether an insurer has acted in bad faith in handling a claim, the totality of the circumstances standard is applied. See Berges, 896 So. 2d at 680 (citation omitted). "[T]he focus in a bad faith case is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured." Id. at 677. The insurer owes a fiduciary duty to act in the insured's best interests. See id. (citation omitted). While the issue of whether an insurer acted in bad faith is ordinarily a question for the jury, courts have, in certain circumstances, concluded as a matter of law that the insurance company did not act in bad faith. See id. at 680 (citation omitted).

## IV. Motion for Summary Judgment

GEICO moves for summary judgment on the bad faith claim asserted against it. The evidence before the Court, viewed in the light most favorable to Hines, shows that Acosta was willing to settle her claim against Cordova for the remaining bodily injury policy limit up until the time that she decided to have surgery (and she had decided to have surgery by March 24, 2009).

Whether GEICO's failure to accept Acosta's October 2, 2007 offer to settle her claim for the bodily injury limit equates to bad faith is a question for the jury to determine. The evidence

7

before the Court is that Acosta's medical records (which GEICO had at the time of the October 2007 offer) indicated that Acosta's injuries were chronic. Acosta has provided the testimony of Susan Kaufmann, a claims practices expert, who has opined that a reasonable claims adjuster would have concluded that Acosta's injuries were permanent based on the medical records describing Acosta's injuries as being chronic. (Doc. No. 128, p. 144-45). Furthermore, Acosta argues that common sense dictates that a chronic condition would result in the need for future medical care to treat any flare-ups that Acosta experienced.

However, even if the jury agrees with GEICO that there was not sufficient evidence in October of 2007 for it to determine that Acosta's injuries were permanent in nature and/or would result in at least $25,000 of damages, there is still a jury question regarding whether GEICO should have attempted to settle Acosta's claim for the bodily injury limit prior to March 2009 based on the additional information GEICO received regarding Acosta's injuries. For example, in October of 2008, GEICO learned that Dr. Martinez had characterized Acosta's injuries as permanent, and he opined that medical care costs would be approximately $3,000 per year and that surgery was a possibility. GEICO also knew that Cordova was driving under the influence at the time of the accident and that Acosta's injuries interfered with her ability to take care of her special needs child.

On the other hand, the Court is cognizant that GEICO is not required to simply accept Acosta's doctor's opinion and could conduct its own review of Acosta's medical records and medical opinions. Furthermore, GEICO also learned that Acosta had also been involved in two other car accidents in 2007. Given all of this information, the jury will have to determine whether a reasonably prudent person, faced with the prospect of paying the total recovery, would

have paid the $25,000 policy limit (or the remaining $21,500 policy limit after Acosta accepted Rodriguez's offer to settle the claim against him for $3,500) to settle this claim prior to March 24, 2009.

Finally, while it appears that Acosta was willing to settle for the $25,000 policy limit in October of 2007, the jury could find that GEICO did not act in bad faith in rejecting her settlement offer at that time. Additionally, the jury could choose to disbelieve Acosta's assertion that she would have settled for the $25,000 policy limit after her October 2, 2007 settlement offer was rejected, given Joyce's behavior of purposefully withholding relevant information about Acosta's surgery from GEICO. Thus, the jury could find that there was no reasonable opportunity to settle for the policy limit once GEICO had the information necessary to properly evaluate Acosta's claim.

Based on the above, fact issues remain for the jury to determine. For these reasons, the Court denies GEICO's motion for summary judgment.

## V.  Conclusion

Accordingly it is ORDERED AND ADJUDGED that:

(1)  Defendant's Motion for Summary Judgment (Doc. No. 117) is **DENIED**.

(2)  The parties are directed to each file their motions in limine (in a single document that does not exceed 25 pages) by *January 19, 2016*, and they are directed to file their responses thereto by *February 1, 2016*.

(3)  The parties are directed to file their joint pretrial statement by *January 29, 2016* .

**DONE AND ORDERED** at Tampa, Florida, this 24th day of November, 2015.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

9