**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JAMES P. HINES, as Personal
Representative of the Estate of Eva
Cordova-Rodriguez,

    Plaintiff,

v.    Case No. 8:14-cv-1062-T-24 TGW

GEICO INDEMNITY COMPANY,

    Defendant.
_____/

**ORDER**

This cause comes before the Court on the parties' motions in limine (Doc. No. 147, 148) and responses thereto (Doc. No. 152, 153). The Court heard limited arguments on parts of these motions during the pretrial conference held on February 3, 2016. Accordingly, the Court will address each motion in turn.

**I. Background**

This is a bad faith insurance case arising out of a car accident. On April 23, 2007, Eva Cordova-Rodriguez ("Cordova") was driving a car that was insured by Defendant GEICO Indemnity Company ("GEICO"). Cordova drove her car into a car being driven by Eunice Acosta ("Acosta"). Cordova was arrested for driving under the influence at the scene. Acosta initially offered to settle her claim for the $25,000 bodily injury limit, but GEICO rejected her initial offer. By the time that GEICO offered Acosta the full $25,000 policy limit, she was unwilling to settle for that amount.

The underlying car accident case went to trial in state court, and on December 4, 2009, the jury awarded Acosta $539,850.00 in compensatory damages and $500 in punitive damages.

Thereafter, the state court entered an order awarding attorneys' fees and costs, for a total judgment of $864,930.11. In May of 2010, Cordova died. Plaintiff James Hines, Jr. was appointed as Cordova's personal representative. On December 12, 2013, Hines filed this bad faith lawsuit against GEICO.

## II. Plaintiff's Motion in Limine

Plaintiff seeks to exclude argument, testimony, and evidence regarding four topics: (1) the contacting and hiring of Plaintiff Hines by Robert Joyce, Esq (Joyce was Acosta's attorney); (2) the assets (or lack thereof) of Cordova's probate estate, other than the bad faith claim and the GEICO policy; (3) Cordova's alcohol and drug use, other than on the date of the accident; and (4) the termination of Acosta's pregnancies. Defendant only opposes the motion in limine as to the first topic—Joyce's contacting of Hines—and therefore, the Court grants Plaintiff's motion in limine as to the other three unopposed topics.

Plaintiff argues that the Court should exclude argument, testimony, and evidence regarding the fact that Joyce contacted and paid him to open and administer Cordova's probate estate in order to assert this bad faith claim. Plaintiff contends that the fact that Joyce contacted and hired him for this purpose is irrelevant to the issues that the jury needs to determine.

GEICO responds that Joyce's contacting and hiring of Plaintiff to set up Cordova's estate and to pursue the bad faith claim shows that GEICO did not have a realistic possibility of settlement within the policy limit. However, Cordova did not die until May of 2010, and Acosta has stated that she was no longer willing to settle her claim against Cordova for the policy limit once she decided to have surgery (and she had decided to have surgery by March 24, 2009). The fact that Acosta's attorney hired Plaintiff to set up Cordova's estate and pursue the bad faith

2

claim more than a year after Acosta was no longer willing to settle her claim against Cordova for the policy limit is not evidence that Acosta was not willing to settle her claim against Cordova for the policy limit prior to March 24, 2009.  The Court rejects GEICO's argument that Joyce's contacting and hiring of Plaintiff is relevant to the issue of whether GEICO had a realistic possibility of settling Acosta's claim within the policy limit.

However, GEICO also argues that it anticipates that Plaintiff will testify regarding his role in this case and characterizes it as being that of an impartial third party.  GEICO contends that in reality Plaintiff is working with Joyce to obtain a bad faith judgment for Acosta.  If Plaintiff does testify in this case and characterizes his role as being an impartial third party, the Court will consider allowing GEICO to inquire about Plaintiff's relationship with Joyce.  However, the Court cannot rule on this issue without first hearing Plaintiff's testimony.

### III.  GEICO's Motion in Limine

GEICO seeks to exclude argument, testimony, and evidence regarding: (1) lay witnesses' understanding regarding the standard for bad faith under Florida law; (2) Acosta's injuries other than what GEICO knew at the time (and excluding evidence regarding the impact of Acosta's injuries on her life); (3) GEICO's alleged violations of its claims manuals, internal policies, codes of conduct, or training manuals; (4) GEICO's alleged incentivizing of its adjusters to undervalue claims through the use of Average Loss Payment metrics; (5) the personnel files of GEICO employees; (6) Plaintiff's expert, Susan Kaufman's, previous relationship with GEICO and/or GEICO's law firm; (7) Plaintiff's contention that GEICO had a duty to take punitive damages into consideration when evaluating Acosta's bodily injury claim; (8) personal opinions about insurance companies and any reference to GEICO's advertising campaigns; and (9) Hines'

heroism. Plaintiff does not oppose GEICO's motion to the extent that it relates to the last two issues—personal opinions about insurance companies, GEICO's advertising campaigns, and Hines' heroism—and to that extent, GEICO's motion in limine is granted. Accordingly, the Court will analyze the remaining seven issues.

### A. Lay Witnesses' Understanding of Bad Faith

GEICO seeks to exclude argument, testimony, and evidence regarding lay witnesses' understanding regarding the standard for bad faith under Florida law. Specifically, GEICO anticipates that Plaintiff will attempt to ask adjusters to describe their understanding of the legal concept of bad faith under Florida law, and GEICO argues that this would be improper legal conclusions by lay witnesses.

Plaintiff responds that he does not intend to elicit such testimony. However, he does intend to ask adjusters about their understanding about industry standards for good faith claims handling. However, such questioning is better asked of the experts, who would be better equipped to answer such questions. Accordingly the Court grants GEICO's motion in limine on this issue.

### B. Acosta's Injuries

Next, GEICO seeks to exclude argument, testimony, and evidence regarding Acosta's injuries other than what GEICO knew at the time (and excluding evidence regarding the impact of Acosta's injuries on her life). Plaintiff agrees to exclude evidence about the extent of Acosta's injuries and the impact that those injuries have on Acosta's life today.

However, Plaintiff argues that whatever GEICO knew at the time (prior to the Acosta's surgery when she was no longer willing to settle) about Acosta's injuries and about the impact of

those injuries on her life should come into evidence because it is relevant to the valuation of Acosta's claim and the reasonableness of GEICO's settlement overtures. Specifically, GEICO knew that Acosta's injuries impaired her ability to take care of her special needs daughter, and Plaintiff likely will argue that GEICO should have taken that into consideration when valuing Acosta's claim once Acosta's doctor stated that her injuries were permanent. The Court agrees that such evidence is relevant to the issue of GEICO's valuation of Acosta's claim, because pursuant to Florida Statute § 627.737(2), Acosta could recover damages against Cordova "for pain, suffering, mental anguish, and inconvenience because of bodily injury" resulting from the car accident to the extent that Acosta suffered a "[p]ermanent injury within a reasonable degree of medical probability."

Accordingly, the Court grants GEICO's motion to the extent that there is evidence about Acosta's injuries today and their effect on her life that GEICO did not know about at the time it was attempting to settle her claim. Otherwise, the motion as to this issue is denied.

### C. Alleged Violations of GEICO's Own Policies and Procedures

Next, GEICO seeks to exclude argument, testimony, and evidence regarding GEICO's alleged violations of its claims manuals, internal policies, codes of conduct, or training manuals. GEICO argues that deviations from these items is not necessarily evidence of bad faith, because it is free to structure its own company guidelines in a manner that goes above and beyond what is required by Florida law.

The Court agrees with GEICO that reference to such materials should be excluded as irrelevant or redundant. Either such evidence will be irrelevant, because GEICO structured its company guidelines in a manner that goes above and beyond what is required under Florida law.

5

Or, alternatively, such evidence will be redundant because evidence of what is required under Florida law would need to be presented in order to determine whether GEICO's policies and procedures are consistent with the requirements of Florida law. Accordingly, the Court grants GEICO's motion on this issue.[1]

### D. GEICO's Alleged Incentivizing of Its Adjusters

Next, GEICO seeks to exclude argument, testimony, and evidence regarding its alleged incentivizing of its adjusters to undervalue claims through the use of Average Loss Payment ("ALP") metrics. GEICO denies that it uses ALP figures to incentivize its adjusters.[2] However, Plaintiff points to Susan Kaufman's expert testimony that GEICO uses ALP metrics to incentivize adjusters to lower claims payouts by counseling adjusters with payouts higher than ALP and favorably recognizing adjusters and/or teams with the lowest ALP. Kaufman opines that GEICO uses ALP metrics to make its claim department a profit center and improperly issues blanket ALP goals and directives.

Even though Kaufman admits that there is no direct evidence that GEICO specifically applied ALP metrics to Acosta's claim, Kaufman opines that GEICO created an environment where ALP metrics were always a consideration in the back of adjusters' minds when adjusting claims. Plaintiff argues that this is relevant evidence to Plaintiff's theory that GEICO

---

[1] If, however, Plaintiff has a purpose for questioning about these materials that will lead to relevant testimony that is not redundant, he is free to ask the Court to reconsider its ruling at trial.

[2] GEICO makes the disingenuous argument that ALP tracks "settlements" not settlement offers, and because Acosta's claim was not settled, ALP is irrelevant. However, in order for there to be a settlement tracked by ALP, there must either be an offer made by GEICO or an offer accepted by GEICO, so ALP actually tracks "accepted offers." Since offers for settlement were made in this case, ALP is relevant.

undervalued Acosta's claim when evaluating it, because it was motivated by ALP. Thus, according to Plaintiff, had GEICO and its adjusters not been improperly motivated by ALP and had exercised good faith when valuing Acosta's claim, GEICO would have offered to settle her claim for the policy limit when Acosta was willing to accept that amount. The Court agrees that this evidence is relevant. See Hogan v. Provident Life & Accident Ins. Co., 665 F. Supp.2d 1273, 1281-82 (M.D. Fla. 2009)(finding that the plaintiff's allegation—that the insurance company set goals for claims termination in order to obtain financial gain—supported the plaintiff's theory that the insurance company was improperly motivated by financial gain when denying the plaintiff's claim, and as a result, the court denied the defendant's motion for judgment on the pleadings); Leavey v. UNUM/Provident Corp., 2006 WL 1515999, at *5 (D. Ariz. May 26, 2006)(considering evidence of the company's practice of terminating claims to affect the bottom line); Jeffers v. Farm Bureau Property & Cas. Ins. Co., 2014 WL 4259485, at *4 (D. Ariz. Aug. 28, 2014)(considering evidence that the adjuster's job performance was influenced by the amount that he paid out on claims); Demetrulias v. Wal-Mart Stores, Inc., 917 F. Supp.2d 993, 1009 (D. Ariz. 2013)(stating that a jury could find that the goals set were arbitrary and placed unreasonable pressure on employees to deny claims).

Additionally, GEICO argues that any relevance of ALP is outweighed by the danger of unfair prejudice. While the Court acknowledges that evidence regarding GEICO's use of ALP could be damaging to GEICO's defense, such evidence would be damaging because it is highly relevant to GEICO's motive in how it values claims. However, whether GEICO was actually motivated by ALP when valuing Acosta's claim is an issue of fact that the jury must determine.

**E.  Personnel Files**

Next, GEICO seeks to exclude argument, testimony, and evidence regarding the personnel files of its employees, arguing that such is completely irrelevant to the issue of whether GEICO handled Acosta's claim in bad faith.  Plaintiff responds that the personnel files show the criteria upon which employees are evaluated and rewarded.

For example, one employee's personnel file instructed him to review the authority levels for adjusters in the 3rd and 4th quartiles of ALP and to reduce or suspend their authority until improvement is noted.  (GEICO 1791).  Additionally, that employee stated that he would provide ALP reports to adjusters to show them where they stand within the division.  (GEICO 1794).

Another employee's personnel file contains a self-appraisal note that he had the lowest ALP for the first quarter of 2009 and was recognized at the Quarterly Celebration.  (GEICO 1571).  Another employee's self-appraisal note stated that her year-to-date ALP coverage was the lowest in the division and that her section received the 1st and 2nd quarter award for the lowest ALP.  (GEICO 2705).

The Court agrees with Plaintiff that this type of evidence contained in the personnel files is relevant to show the criteria upon which GEICO's employees are evaluated and rewarded.  To that extent, GEICO's motion is denied.  However, the Court agrees that the entire personnel files cannot come into evidence, as they also contain irrelevant and personal employee information (such as information regarding pay, leave, and other issues that do not relate to claims handling).

**F. Susan Kaufman's Relationship with GEICO and Its Law Firm**

Next, GEICO seeks to exclude argument, testimony, and evidence regarding Plaintiff's expert, Susan Kaufman's, previous relationship with GEICO and/or GEICO's law firm.  GEICO

argues that Kaufman's prior relationship with GEICO and its law firm is irrelevant to the instant matter and the issue of whether GEICO handled Acosta's claim in bad faith. Furthermore, GEICO argues that it will improperly bolster Kaufman's opinions in front of the jury.

Plaintiff responds that he anticipates that GEICO will seek to establish that Kaufman is biased because she has been retained by Plaintiff's law firm on prior occasions. In order to rebut the biased characterization, Plaintiff intends to ask Kaufman whether she has also been retained by GEICO's law firm in the past.

The Court finds that asking Kaufman about whether she has been retained by GEICO and/or GEICO's law firm in the past is relevant to the issue of bias if GEICO attempts to establish bias by asking if Kaufman has been retained by Plaintiff's law firm on prior occasions. To that extent, the motion is denied. If the questioning of Kaufman's past relationship with GEICO and its law firm goes further, GEICO can raise an objection at that time.

### G. Punitive Damages

Next, GEICO seeks to exclude argument, testimony, and evidence regarding Plaintiff's contention that GEICO had a duty to take punitive damages into consideration when evaluating Acosta's bodily injury claim. This is because "Florida public policy does not permit an insurance company to insure the payment of punitive damages." Ging v. American Liberty Ins, Co., 423 F.2d 115, 119 (5th Cir. 1970)(citations omitted).

Plaintiff responds that based on Ging, once GEICO provided defense counsel to defend Cordova against Acosta's claim (which sought both compensatory and punitive damages), GEICO had a duty to consider the potential for punitive damages when valuing Acosta's claim. Plaintiff appears to be broadening the scope of Ging.

9

In <u>Ging</u>, the insured was involved in a car accident with the claimant. <u>See id.</u> at 117. The claimant's estate sued, alleging that the accident occurred due to the insured's gross negligence, and the estate sought both compensatory and punitive damages. <u>See id.</u> The estate offered to settle for $55,000, and the insurance company offered $3,500. <u>See id.</u> The estate learned that the insured had limited financial resources and offered to settle the entire claim for the policy limit.[3] <u>See id.</u> The insurance company refused the policy limit offer to settle.

The case want to trial, and judgment was entered against the insured for $11,195 in compensatory damages and $25,000 in punitive damages. <u>See</u> <u>Ging v. American Liberty Ins, Co.</u>, 293 F. Supp. 756, 758 (N.D. Fla. 1968). The insurance company paid the entire compensatory damages award, but it did not pay the punitive damages award. <u>See id.</u>

In consideration for the estate not levying against him on the punitive damages award, the insured assigned his bad faith claim against the insurance company to the estate. <u>See id.</u> The estate asserted a bad faith failure to settle claim against the insurance company, and the insurance company moved for summary judgment. The district court framed the issue as follows:

> Had [the insurance company] accepted the offer of [the estate] to settle the damage suit by paying over its entire policy limits, there would be no punitive damage award outstanding against [the insured]. However, it is also true that, except for the outstanding punitive damage judgment, [the insurance company's] decision not to accept [the estate's] offer of settlement— whether reached in good faith or not—caused no damage to [the insured]. The merger of these two facts precipitates the real issue in this case— is there any duty on the insurance company, in the conduct of settlement negotiations, to consider the interest of the insured in avoiding judgment on a non-covered item of damages?

---

[3]The court never identified the amount of the policy limit.

Id. The district court granted the insurance company's motion for summary judgment, stating:

> [I]n the view of this Court, the conduct of [the insurance company] in declining to accept [the estate's] offer to settle in the original damage suit caused no legally compensable damage to its insured . . . . The question of the insurer's good or bad faith is never reached, since, with respect to the claim for punitive damages, there was no duty not to act in bad faith. The duty only exists with respect to the claims within the scope of the policy, and as to those items [the insured] was not injured, because he was not subjected to an excess judgment.
>
>    *  *  *
>
> There is, of course, a duty upon the insurer in cases involving punitive damages to 'inform the insured fully and timely before the trial of the company's position that the contract (does) * * * not cover punitive damages.' But that duty is not here involved. The record here is clear and uncontroverted that [the insurance company] satisfied this duty. [The insured] was so advised by [the insurance company] . . . more than 9 ½ months before trial.

Id. at 761-62 (internal citation omitted).

The estate appealed. In describing the insurance company's handling of the claim, the appellate court stated the following:

> The insurance company, its counsel and its adjusters realized that an award of punitive damages was a strong possibility but neither the company nor its counsel ever communicated to [the insured] this potential they recognized. [The insured] was not told about any offer of settlement until less than two weeks before the date set for trial and then only in a context indicating that the [$3,500] offer which the [insurance] company had made was adequate. Although [the estate] had twice furnished the insurance company with extra copies of his letters offering to settle the entire litigation for the amount of the policy coverage with express requests to forward such letters to [the insured], neither letter was furnished to [the insured]. [The insured] was never told that a contribution from him could be added to the insurance company's offer to effect a settlement. [The insured] was never advised that proof of his poor financial condition would weigh heavily in keeping any punitive damage award to a minimum. No attempt was made to have documentary proof at the trial to show [the insured's] financial condition. When [the insured] did not come from his home in Virginia to Florida for the trial, no continuance was

> sought. [The insured] received no word about the trial's outcome for five and one-half months. In fact, the [insured] was not advised that a verdict had been entered against him in any amount until . . . thirteen days before time for appeal would expire.

Ging, 423 F.2d at 117-18 (footnotes omitted).

The appellate court reversed the district court's summary judgment order, stating: "The error in treating this record as one appropriate for summary disposition arose from the fact that it was not made clear to the court below that [the insurance company] actually undertook the defense of the entirety of the lawsuit filed against its insured, both as to compensatory and punitive damages." Id. at 119. The appellate court stated that once the insurance company undertook the defense of the punitive damages claim, it had a duty not to overlook the interest of the insured with regard to that claim. See id. at 120. Finally, the appellate court stated that once the insurance company undertook the duty to defend against the punitive damages claim, the insurance company's duties expanded to the following:

> [I]t included apprising the [insured] of settlement opportunities within a reasonable time after they were presented; it entailed the duty to warn the [insured] of difficulties which the litigation posed for him wherever such difficulties were not included within the contract of indemnity; it included the duty to advise the [insured] of the outcome of the litigation and of any particular procedures which might lessen its financial impact upon him; and it included the conduct of settlement negotiations in good faith to the interests of the insured wherever those interests might be divergent from the interests of the insurance company. . . . [O]nce having undertaken the defense of a non-covered claim, the insurance company is under an obligation to act in good faith toward its insured to the entire extent of its undertaking.

Id. at 120-21.

Thus, this Court does not read Ging to hold that the insurance company has a duty to settle a claim for both punitive and compensatory damages if it can do so within the policy limit.

Instead, this Court reads Ging to hold that the insurance company must *communicate* with the insured to warn and advise him regarding a punitive damages claim once the insurance company undertakes the defense of such a claim.  Accordingly, this Court agrees with GEICO that GEICO did not have a duty to take punitive damages into consideration when evaluating Acosta's bodily injury claim.  To that extent, the Court grants GEICO's motion in limine.  However,to the extent that the aggravating circumstances of this accident—the fact that Cordova was driving under the influence when she caused this accident—could cause a jury to increase a *compensatory* damages award, such argument and evidence will be allowed.

### IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Plaintiff's Motion in Limine (Doc. No. 148) is **GRANTED**.  The Court excludes all argument, testimony, and evidence regarding the following four topics:

  (a) the contacting and hiring of Hines by Robert Joyce, Esq, unless Hines testifies that he is an impartial third party (at which point the Court will revisit this issue);

  (b) the assets (or lack thereof) of Cordova's probate estate, other than the bad faith claim and the GEICO policy;

  (c) Cordova's alcohol and drug use, other than on the date of the car accident; and

  (d) the termination of Acosta's pregnancies.

(2) GEICO's Motion in Limine (Doc. No. 147) is **GRANTED IN PART AND DENIED IN PART** as follows:  The motion is **GRANTED** to the extent that the

13

Court excludes all argument, testimony, and evidence regarding:

(a) lay witnesses' understanding regarding the standard for bad faith under Florida law;

(b) Acosta's injuries today and their effect on her life that GEICO did not know about at the time it was attempting to settle her claim;

(c) GEICO's alleged violations of its claims manuals, internal policies, codes of conduct, or training manuals;

(d) Plaintiff's contention that GEICO had a duty to take punitive damages into consideration when evaluating Acosta's bodily injury claim;

(e) personal opinions about insurance companies and any reference to GEICO's advertising campaigns; and

(f) Hines' heroism.

The motion is **DENIED** to the extent that GEICO seeks to exclude argument, testimony, and evidence regarding:

(a) Plaintiff's expert, Susan Kaufman's, previous relationship with GEICO and its law firm;

(b) GEICO's alleged incentivizing of its adjusters to undervalue claims through the use of ALP metrics; and

(c) the personnel files of GEICO's employees to the extent that the files deal with claims handling issues.

**DONE AND ORDERED** at Tampa, Florida, this 19th day of February, 2016.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

14